UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

LARRY MCNAIR,

                 **Plaintiff,**

          **- against -**

KIRBY FORENSIC PSYCHIATRIC
CENTER, MICHAEL F. HOGAN,
STEVE RABINOWITZ, MICHAEL
KUNZ, S. MACHANICAL, TROMUL E.
TUZEL, CAROLYN TODD, J.
CLEAVER, MARY BETH, R.N. CUFF,
MS. POSAT, PHOTOCOPYING
CLERK, RISK MANAGEMENT S.
JOSEPH, AND VINCENT MICOLLI,

              **Defendants.**

------------------------------------------------ X

**OPINION AND ORDER**

**09 Civ. 6660 (SAS)**



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

       Pro se plaintiff Larry McNair brings this action pursuant to section

1983 of Title 42 of the United States Code ("section 1983") against the Kirby

Forensic Psychiatric Center ("Kirby"), various employees thereof, and the

Commissioner of the New York State Office of Mental Health ("OMH"). McNair

alleges, *inter alia*, that defendants were deliberately indifferent to his serious

medical needs, denied him access to the courts, and retaliated against him when he

complained about missing legal paperwork. Plaintiff alleges violations of the First,

Eighth, and Fourteenth Amendments and seeks damages and equitable relief.
Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil
Procedure, for summary judgment dismissing plaintiff's Complaint on the ground
that there is no genuine issue as to any material fact and, therefore, defendants are
entitled to judgment as a matter of law.  Plaintiff was instructed, by Court Order, to
file his opposition papers, if any, by August 30, 2010.  This date was then
adjourned until September 24, 2010, in a memo endorsed letter dated September 2,
2010, from Shuva J.  Paul, Assistant Attorney General ("AAG"), to this Court.  On
September 30, 2010, AAG Paul informed this Court that plaintiff did not intend to
oppose the motion.[1]  Based upon defendants' motion papers, and this Court's
independent review of the evidence in the record, defendants' motion for summary
judgment is granted.  For the following reasons, this case is dismissed in its
entirety.

---

[1]    *See* 9/30/10 Letter from AAG Paul ("Mr.  McNair confirmed to me
that he was aware that the Court previously had extended his deadline to respond
from August 30, 2010 to September 24, 2010, and asked me to convey to the Court
his intention to offer no opposition.").  When my deputy clerk attempted to contact
McNair by telephone to confirm this, a woman hung up the phone shortly after he
identified himself.

## I.   BACKGROUND[2]

### A.   McNair's Treatment at Kirby

On May 27, 2009, McNair was transferred from Rikers Island to Kirby, a secure adult forensic psychiatric hospital operated by OMH, for care and treatment pursuant to Article 730 of the New York Criminal Procedure Law.[3] Because McNair was found unfit to proceed to trial on felony drug charges, he was committed to the custody of the OMH for a period not to exceed ninety days.[4] Kirby provides evaluation, treatment, and rehabilitation to criminal defendants for restoration of fitness to stand trial, among other things.[5]  McNair's hospitalization at Kirby lasted from May 27, 2009 through July 9, 2009.[6]  On July 9, 2009, McNair was restored to fitness to stand trial and was transferred back to Rikers

---

[2]    The following facts are drawn from Defendants' Rule 56.1 Statement. The facts contained in Defendants' Rule 56.1 statement are deemed admitted given plaintiff's failure to dispute any of them.  *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

[3]    *See* Defendants' Rule 56.1 Statement ("Def.  56.1") ¶ 7 (citing the Declaration of Michal Kunz, M.D., Clinical Director at Kirby, dated July 20, 2010 ("Kunz Decl."), ¶¶ 7, 11-12).

[4]    *See id.* ¶ 6 (citing Kunz Decl.  ¶¶ 12-13).

[5]    *See id.* ¶ 8 (citing the Declaration of Tom Tuzel, M.D., McNair's attending psychiatrist at Kirby, dated July 20, 2010 ("Tuzel Decl."), ¶ 6).

[6]    *See id.* ¶ 12.

3

Island.[7]  McNair alleges that he was denied medical and psychiatric care while he was at Kirby.[8]

Patients at Kirby have "Treatment Teams" that include an: attending psychiatrist, attending physician (the "medical specialist"), social worker, psychologist, nurse, and others.[9]  McNair's Treatment Team included his attending psychiatrist, Tom Tuzel, M.D., his attending medical specialist, Jesus Evangelista, M.D., the ward social worker, Carolyn Todd, L.C.S.W., the ward psychologist, Jessica Klaver, Ph.D., the ward nurse Carol Cuff, R.N., and the Treatment Team Leader, Stunis Machanical, L.C.S.W.[10]  Dr. Evangelista conducted McNair's physical examination upon admission, prescribed medical treatment including non-psychiatric medications, and provided ongoing medical treatment and evaluation.[11]  Dr. Tuzel conducted McNair's psychiatric examination upon admission, prescribed psychiatric treatment including psychiatric medications, and

---

[7]     *See id.* ¶ 7.

[8]     *See id.* ¶ 12 (citing Complaint ¶¶ 3, 4, 15, 16, 30, 32 and 36).

[9]     *See id.* ¶ 9 (citing Tuzel Decl. ¶ 7).

[10]    *See id.*

[11]    *See id.* ¶ 10 (citing Declaration of Jesus M. Evangelista, M.D., plaintiff's attending physician at Kirby, dated July 22, 2010 ("Evangelista Decl.") ¶¶ 6, 15).

4

provided ongoing treatment and evaluation.[12]

Prior to his admission at Kirby, McNair was prescribed medications at Rikers Island to treat congestive heart failure and hypertension.[13]  Based on McNair's reported medical history, Dr. Evangelista examined him for any left-side weakness.  Dr. Evangelista observed McNair's gait to be steady and his feet and ankles unremarkable, and noted there was no noticeable weakness on McNair's left side when compared to the right.[14]  Following the physical examination, Dr. Evangelista prescribed McNair a course of non-psychiatric treatment including the five medications previously prescribed at Rikers Island for his congestive heart failure and hypertension: Digoxin, Coreg, Lasix, Lisinopril, and aspirin.[15]  In Dr. Evangelista's clinical judgment, no change in McNair's medical treatment or medications was warranted during his stay at Kirby.[16]

---

[12]     *See id.* ¶ 11 (citing Tuzel Decl.  ¶¶ 5, 24).

[13]     *See id.* ¶ 3 (citing Evangelista Decl. ¶ 8 (stating that McNair's Transfer Record documented a history of hypertension and congestive heart failure, as well as a stroke which occurred in 2007)).

[14]     *See id.*  ¶ 18 (citing Evangelista Decl. ¶ 11).

[15]     *See id.*  ¶ 19 (citing Evangelista Decl.  ¶ 15).

[16]     *See id.*  ¶ 25 (citing Evangelista Decl.  ¶ 18).

McNair engaged in regular physical activity – playing basketball and weight lifting – while at Kirby.[17]   McNair complained of pain in his ankle/foot on two occasions.[18]  During the weekend starting June 13, 2009, McNair complained to Kirby staff that he twisted his left foot while trying to run and was experiencing pain in that foot.[19]  McNair was diagnosed with a tendon sprain and treated with Naproxen,[20] which relieved his pain.[21]  On June 27, 2009, McNair complained that he injured his foot during a basketball game that took place the day before.[22]  An x-ray yielded negative results and McNair was treated with Naproxen, which again relieved his pain.[23]  McNair missed two medical appointments, a cardiology follow-up scheduled for June 16, 2009 and an eye clinic appointment scheduled for

---

[17]     *See id.* ¶ 34.

[18]     *See id.* ¶ 35.

[19]     *See id.* ¶ 36 (citing Evangelista Decl. ¶ 19).  Registered Nurse Carol Cuff was not on duty that weekend. *See* Declaration of Carol Cuff, R.N., Registered Nurse II at Kirby, dated July 21, 2010 ("Cuff Decl.") ¶ 25.

[20]     Naproxen is an over-the-counter non-steroidal anti-inflammatory pain reliever.

[21]     *See* Def.  56.1 ¶ 36 (citing Evangelista Decl. ¶ 19).

[22]     *See id.* ¶ 37 (citing *id.*).  On Tuesday, June 30, 2009, McNair complained to Nurse Cuff of ankle pain resulting from a basketball game played on Friday, June 26, 2009.  Nurse Cuff had not been on duty over the June 27-28, 2009 weekend. *See* Cuff Decl.  ¶ 26.

[23]     *See id.* (citing Evangelista Decl. ¶ 19).

6

July 2, because he refused to go.[24]

On May 27, 2009, Dr. Tuzel conducted his initial psychiatric evaluation of McMair after reviewing his Transfer Record and Article 730 competency reports, which indicated that McNair might have a depressive disorder.[25] McNair's Transfer Record indicated an Axis I diagnosis of Psychosis, Not Otherwise Specified, and an Axis II diagnosis of Antisocial Personality Disorder.[26] However, the Transfer Record also indicated that McNair's previous psychiatric symptoms were in remission.[27] Throughout his hospitalization, McNair neither displayed nor reported any feelings of depression, hopelessness, suicidal ideation, or other symptoms of distress.[28] Based on McNair's mental health history, his history of criminal conduct, and the court-appointed examiner's diagnostic impression of a depressive disorder, Dr. Tuzel determined that McNair

---

[24]     *See id.* ¶ 38 (citing Evangelista Decl. ¶ 31 and Tuzel Decl. ¶ 35).

[25]     *See id.* ¶¶ 42-43 (citing Tuzel Decl. ¶¶ 8, 13).

[26]     *See id.* ¶ 44 (citing *id.* ¶ 9 (citing Transfer Record, Ex. A to Tuzel Decl., at 4)).

[27]     *See id.* ¶ 45 (citing *id.* ¶ 12 (citing Transfer Record at 4)).

[28]     *See id.* ¶ 48 (citing *id.* ¶ 28 ("He was observed to act in a manner indicating he was free of auditory and visual hallucinations, internal preoccupation, delusional thinking, and other perceptual disturbances that characterize psychotic disorders.")).

should be evaluated for symptoms of a bipolar or depressive disorder.[29]  At the conclusion of this initial evaluation, Dr. Tuzel entered an Axis I diagnosis of Polysubstance Dependence and Rule Out Mood Disorder, Not Otherwise Specified.[30]  Based upon his clinical judgment, Dr. Tuzel continued McNair's prescription for Seroquel, an anti-psychotic medication known for its mood-stabilizing properties.[31]  In Dr. Tuzel's medical opinion, McNair did not suffer from depression or any other kind of mood disorder, including bipolar disorder, nor did he exhibit symptoms of such disorders at any time during his stay at Kirby.[32]  Accordingly, Dr. Tuzel did not prescribe antidepressant medication to treat McNair for depression because there was no clinical basis for doing so.[33]

**B.     The Alleged Loss of McNair's Legal Papers**

McNair was the co-plaintiff in *Stevens v. Hess*, 07 Civ. 6998, a civil rights case brought under section 1983 (hereinafter the *"Stevens* case").[34]  In the

---

[29]     *See id.* ¶ 52 (citing Tuzel Decl. ¶ 22).

[30]     *See id.* (citing *id.* ¶ 23).

[31]     *See id.* ¶ 53 (citing *id.* ¶ 22).  McNair had been prescribed Seroquel at Rikers Island and appeared to be psychiatrically stable on this medication.  *See id.*

[32]     *See id.* ¶ 62 (citing *id.* ¶ 39).

[33]     *See id.* (citing *id.*).

[34]     *See id.* ¶ 88.

*Stevens* case, the plaintiffs were directed to comply with defendants' discovery demands by June 1, 2009, or their case would be dismissed.[35]  On June 10, 2009, McNair gave a forty-page document he intended to file in the *Stevens* case to Carolyn Todd, his social worker, to be photocopied at his expense.[36]  When Todd returned the document to McNair, he complained that some of the pages were missing.[37]  McNair complained to the New York State Commission on Quality of Care and Advocacy for Persons with Disabilities ("CQC") that his legal papers had been lost.  On June 17, 2009, CQC contacted Kirby's Risk Manager, Jaimon Joseph, to inform him of McNair's complaint.[38]  Joseph spoke with Todd who informed him that she believed all of  McNair's documents had been returned to him, with no gaps in content or sequence.[39]  Joseph found no evidence that McNair had been deprived, accidentally or otherwise, of any legal papers whatsoever.[40]

On June 19, 2009, the Court in the *Stevens* case placed the matter on suspense for ninety days pending dismissal if the plaintiffs failed to contact the

---

[35]     *See id.* ¶ 89 (citing ECF Docket Entry # 38).

[36]     *See id.* ¶ 90.

[37]     *See id.* ¶ 91.

[38]     *See id.* ¶ 92.

[39]     *See id.* ¶ 93.

[40]     *See id.* ¶ 94.

Court.[41]  On October 7, 2009, after not receiving any substantive communication from either plaintiff since the date of the suspense order, the Court dismissed the *Stevens* case without prejudice.[42]  On January 12, 2010, at plaintiffs' request to reopen the *Stevens* case, the Court ordered the case reopened.[43]  The *Stevens* case then settled and a Stipulation and Order of Settlement and Discontinuance was filed on June 25, 2010.[44]

### C.    McNair's Alleged Inability to Send and Receive Mail

Under Kirby policy, cigarettes, cash and other currency, including stamps, are contraband because their possession tends to promote exploitative conduct among patients such as theft, false accusations of theft, fights, prostitution, and the solicitation of sexual favors.[45]  Although possession of stamps is restricted, patients are allowed to mail out two letters per day at no cost to them, beyond which they are charged the cost of mailing.[46]  McNair was allowed to mail two letters per day at no cost to him, and to mail more than two letters per day upon the

---

[41]    *See id.* ¶ 95.

[42]    *See id.* (citing ECF Docket Entry # 48).

[43]    *See id.* ¶ 96 (citing ECF Docket Entry # 52).

[44]    *See id.* ¶ 97 (citing ECF Docket Entry # 59).

[45]    *See id.* ¶ 98.

[46]    *See id.* ¶ 99.

payment of postage.[47]   In fact, McNair sent outgoing mail, including the Complaint

in the instant matter, and received incoming mail while he was Kirby.[48]

### D.    McNair's Misconduct at Kirby

#### 1.    McNair's Threat Against Dr. Tuzel

Under Kirby's "Patient Level System," which was designed to

minimize violence in the hospital and to motivate patients to comply with

prescribed treatment, patients who engage in verbal abuse or threatening behavior

have their ward privileges restricted pending the cessation of such behavior.

Nonviolent behavior is a prerequisite to moving from Level 1 (the lowest level and

the initial level for all new patients) to Level 2 and then to Level 3 (the highest).   In

order to remain or advance beyond Level 2, patients must exhibit "no threatening

behavior" and "no verbal abuse."[49]   Kirby's three-tiered Patient Level System is

described in the Patient Orientation Handbook.[50]   McNair received a copy of this

Handbook at Kirby.[51]

---

[47]     *See id.* ¶ 100.

[48]     *See id.* ¶ 101.

[49]     *See id.* ¶ 102.

[50]     *See id.* ¶ 103.

[51]     *See id.* (citing Deposition of Larry McNair ("McNair Dep."), Ex. A to the Declaration of AAG Paul, at 157).

11

On June 10, 2009, Dr. Tuzel approved McNair for Level 2 privileges based on his satisfactory adjustment to ward rules.[52]  Shortly thereafter, on June 17, 2009, McNair verbally threatened that he "would do something to" Dr. Tuzel if he were to see him on the street.[53]  In making this verbal threat, McNair admitted that he meant he would wait until Dr. Tuzel got off of work and would then shoot Dr. Tuzel in the face.[54]  In response to McNair's verbal threat, Dr. Tuzel reduced his ward privileges from Level 2 to Level 1.[55]  Dr. Tuzel did not physically touch McNair, make any physical gestures toward him, or threaten him with the use of physical force or in any other way.[56]

### 2.   McNair's Violation of Kirby's Rule Prohibiting Contraband

As stated earlier, cigarettes are contraband at Kirby.  It is Kirby's policy to  permit searches of persons and their possessions for contraband in order to maintain a safe and secure patient environment.[57]  Patients found in possession

---

[52]   *See id.* ¶ 104.

[53]   *See id.* ¶ 105 (quoting McNair Dep. at 144).

[54]   *See id.* (citing *id.* ("I was probably going to shoot him, shoot him right in his face.  Wait until he get off work.  Shoot him right in his fucking face.").

[55]   *See id.* ¶ 106.

[56]   *See id.* ¶ 107.

[57]   *See id.*

of contraband are placed on visitor restrictions.[58] On July 3, 2009, in keeping with

Kirby policy, Dr. Tuzel restricted McNair's visitation privileges for the Fourth of

July weekend after being informed that cigarettes had been found in McNair's

locker.[59] The cigarettes were found after McNair and several other patients had

been observed smoking in the recreation yard.[60]

### 3.    McNair's Threats of Violence Against Kirby Staff

On July 7, 2009, during a ward search for contraband, McNair refused

to leave the dining room, threatened to kill Dr. Cristina Musat, Director of

Psychiatry, and lunged at another staff member before being physically

restrained.[61] Because of McNair's agitation and threats of violence, Dr. Tuzel

ordered the administration of emergency medication and directed that McNair be

secluded for a short period of time.[62] As a result of the July 7, 2009 incident, Dr.

Tuzel ordered McNair's transfer from the 6 West ward to the more secure 4 West

ward, where he would receive a higher level of supervision.[63] McNair was

---

[58]    *See id.* ¶ 109.

[59]    *See id.* ¶ 110.

[60]    *See id.*

[61]    *See id.* ¶ 111.

[62]    *See id.* ¶ 112.

[63]    *See id.* ¶ 113.

transferred to 4 West that day.[64]

### E.    Kirby's Response to McNair's Complaints

While at Kirby, McNair contacted CQC who, in turn, contacted Kirby's Risk Manager, Jaimon Joseph, regarding complaints made by McNair that his visitation privileges were being inappropriately restricted, that he was being subjected to excessive searches, and that he was physically abused during a staff escort by four staff members.[65]   In response, Joseph conducted an investigation in which he interviewed McNair, six other Kirby patients, Dr. Tuzel, a ward nurse, the Director of Psychiatry, six Security Hospital Treatment Assistants ("SHTAs"), a Senior SHTA, the Supervising Senior SHTA, and four safety officers and their supervising sergeant.[66]

Joseph wrote a Final Investigative Report, dated July 27, 2009, summarizing the results of his investigation.[67]   With respect to McNair's complaint about the restriction of visits, Joseph noted that the only time McNair's visits were restricted was over the weekend of July 4, 2009.[68]   Joseph found that McNair's

---

[64]    *See id.*

[65]    *See id.* ¶ 114.

[66]    *See id.* ¶ 115.

[67]    *See id.*

[68]    *See id.* ¶ 116.

14

visits were appropriately restricted following the discovery of contraband in his locker.[69] With respect to McNair's complaint about excessive searches, Joseph found no evidence that McNair was subjected to excessive or overly intrusive searches given that he had been observed smoking.[70] Finally, with respect to McNair's complaint about physical abuse, Joseph found the allegations to be unsubstantiated based on the fact that no one ever witnessed McNair being abused and the fact that McNair never complained of injury or pain.[71]

### F.    Defendants' Lack of Personal Involvement

McNair named Commissioner Hogan as a defendant because of his belief that as the Commissioner, Hogan is responsible for the actions of his subordinates.[72] McNair never wrote to Commissioner Hogan or had any direct contact with him regarding the allegations in the Complaint.[73] Furthermore, McNair never wrote, telephoned, or saw Steven Rabinowitz, Kirby's Executive Director, or had any other contact with him.[74] Nor did McNair ever write to or

---

[69]    *See id.*

[70]    *See id.* ¶ 117.

[71]    *See id.* ¶ 118.

[72]    *See id.* ¶ 119 (citing McNair Dep. at 150).

[73]    *See id.* ¶ 120 (citing McNair Dep. at 150-51).

[74]    *See id.* ¶ 121 (citing McNair Dep. at 153).

15

speak with Vincent Miccoli, Kirby's Deputy Director, about any of the allegations in the Complaint.[75]

Finally, McNair named Dr. Cristina Musat, Kirby's Director of Psychiatry, as a defendant because of his belief that Dr. Musat is responsible for the actions of her subordinates.[76]  McNair named the ward psychologist, Jessica Klaver, Ph.D., because she is listed in his treatment plan.[77]  Although McNair observed Dr. Klaver in group therapy sessions, he never spoke with her directly.[78] McNair named his treatment team leader, Stunis Machanical, L.C.S.W., as a defendant because of his mistaken belief that Machanical had the responsibility to prescribe McNair's psychiatric and medical treatment.[79]

## II.    LEGAL STANDARDS

### A.    Summary Judgment - Unopposed

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

---

[75]    *See id.* ¶ 122 (citing McNair Dep. at 152-53).

[76]    *See id.* ¶ 123 (citing McNair Dep. at 157).

[77]    *See id.* ¶ 124 (citing McNair Dep. at 157-58).

[78]    *See id.* ¶ 125 (citing McNair Dep. at 158).

[79]    *See id.* ¶ 126-27 (citing McNair Dep. at 106).

16

law."[80] "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law.'"[81] "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[82] Summary judgment is therefore "appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[83]

When the non-moving party "'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'"[84] If the moving party has not met this burden, then the court must deny summary judgment even though the non-moving party has not opposed the

---

[80]     Fed. R. Civ. P. 56(c).

[81]     *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008)).

[82]     *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).

[83]     *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).

[84]     *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)).

17

motion.[85]   In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the non-moving party and draw all reasonable inferences" in that party's favor.[86]   Furthermore, the court may not rely solely on the moving party's statement of undisputed facts contained in its Local Civil Rule 56.1 statement.[87]   Instead, the court must be satisfied that the moving party's assertions are supported by the evidence in the record.[88]

In sum, "[w]here, as here, a nonmoving pro se party has failed to submit papers in opposition to a motion for summary judgment, summary judgment may be granted as long as the Court is satisfied that the undisputed facts 'show that the moving party is entitled to a judgment as a matter of law,' and

---

[85]    *Id.* (citing *Amaker*, 274 F.3d at 681).  *Accord Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) ("The local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.").

[86]    *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson*, 477 U.S. at 247-50, 255).  Moreover, where a plaintiff is proceeding pro se, his pleadings must be considered under a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  *Accord Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("Because [plaintiff] is a pro se litigant, we read his supporting papers liberally."). Accordingly, a pro se party's pleadings must be "interpret[ed] . . . to raise the strongest arguments they suggest." *Id.*

[87]    *See Vermont Teddy Bear Co.*, 373 F.3d at 244.

[88]    *See id.* (citing *Giannullo v. City of NY*, 322 F.3d 139, 140 (2d Cir. 2003)).

plaintiff has received notice that failure to submit evidence in opposition may result in dismissal of his case."[89]

## B.   Section 1983

Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere."[90]  In order to state a claim under section 1983, a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution.[91]   However, in enacting section 1983, Congress did not abrogate Eleventh Amendment immunity,[92] which bars a suit, in law or equity, against a State by a citizen of that State, absent an unequivocal waiver of immunity

---

[89]     *Blackett v. Pathmark Stores, Inc.*, No. 01 Civ. 6913, 2002 WL 31385817, at *2 (S.D.N.Y. Oct. 21, 2002) (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)).

[90]     *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

[91]     *See Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004) (citation omitted).

[92]     *See Quern v. Jordan*, 440 U.S. 332, 345 (1979) ("[Section] 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States.").

by the State or the abrogation of the immunity by Congress.[93] "A state's Eleventh Amendment protection from suit extends to its agencies and departments."[94] Moreover, the Eleventh Amendment bar "remains in effect when State officials are sued for damages in their official capacity."[95] Given the Eleventh Amendment immunity, the Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under [section] 1983."[96] Thus, section 1983 "does not provide a federal forum for litigants who seek a remedy against a [S]tate for alleged deprivation of rights secured by the United States Constitution."[97]

Furthermore, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983.'"[98] Thus, "[a] supervisory official

---

[93]     *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-101 (1984).

[94]     *Morningside Supermarket Corp. v. New York State Dep't of Health*, 432 F. Supp. 2d 334, 338 (S.D.N.Y. 2006) (citing *Pennhurst*, 465 U.S. at 100).

[95]     *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citation omitted).

[96]     *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *Accord Huminski v. Corsones*, 396 F.3d 53, 70 (2d Cir. 2005).

[97]     *Bryant v. New York State Dep't of Corr. Servs. Albany*, 146 F. Supp. 2d 422, 425 (S.D.N.Y. 2001) (citing *Will*, 491 U.S. at 66, 69).

[98]     *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).

cannot be liable solely on account of the acts or omissions of his or her subordinates."[99] [100] In 2009, the Supreme Court held that "[b]ecause vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution."[101] The Supreme Court explicitly rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution."[102] Thus, "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."[103]

The *Iqbal* decision abrogates several of the categories of supervisory liability enumerated in *Colon v. Coughlin*.[104] *Iqbal*'s "active conduct" standard

---

[99]     *Ford v. Conway*, No. 03 Civ. 0927S, 2004 WL 1071171, at *4 (W.D.N.Y. Mar. 16, 2004).

[100]     *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).

[101]     *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1948 (2009) (emphasis added).

[102]     *Id.* at 1949.

[103]     *Id.*

[104]     58 F.3d 865 (2d Cir. 1995).  Under *Colon*, "[t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed

only imposes liability on a supervisor through section 1983 if that supervisor had an active hand in the alleged constitutional violation. Only two *Colon* categories survive after *Iqbal* — (1) a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation, and part of (3) if that supervisor creates a policy or custom under which unconstitutional practices occurred. The other *Colon* categories impose the exact types of supervisory liability that *Iqbal* eliminated — situations where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate.

## C.   Deliberate Indifference to Serious Medical Needs

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners.[105] The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."[106] Because

---

to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Id.* at 873.

[105]   U.S. Const. amend. XIII.

[106]   *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). *Accord Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("To violate the Cruel and Unusual Punishments Clause, a prison

22

the inadvertent or negligent failure to provide adequate medical care does not rise

to the level of deliberate indifference, allegations of medical malpractice or

negligent treatment are insufficient to state a claim under section 1983.[107] "Prison

officials have a duty to provide prisoners with the 'reasonably necessary medical

care which would be available to him or her . . . if not incarcerated.'"[108]  However,

a prison cannot be required to meet the same standard of medical care found in

outside hospitals.[109]

 "'The deliberate indifference standard embodies both an objective and

a subjective prong.'"[110]  "The objective 'medical need' element measures the

severity of the alleged deprivation, while the subjective 'deliberate indifference'

---

official must have a sufficiently culpable state of mind . . . . In prison-conditions
cases that state of mind is one of 'deliberate indifference' to inmate health or safety
. . . .") (quotations and citations omitted).

 [107] *See Estelle*, 429 U.S. at 105-06.

 [108] *Candeleria v. Coughlin*, No. 91 Civ. 2978, 1996 WL 88555, at *7
(S.D.N.Y. Mar. 1, 1996) (quoting *Langley v. Coughlin*, 888 F.2d 252, 254 (2d Cir.
1989)). *Accord Edmonds v. Greiner*, No. 99 Civ. 1681, 2002 WL 368446, at *8
(S.D.N.Y. Mar. 7, 2002) ("A person who is incarcerated is entitled to receive
adequate medical care.").

 [109] *See Archer v. Dutcher*, 733 F.2d 14, 17 (2d Cir. 1984) ("We have no
doubt that the same standards of medical care cannot be imposed upon a prison as
are presumed to be realized at a hospital.").

 [110] *Morrison v. Mamis*, No. 08 Civ. 4302, 2008 WL 5451639, at *5
(S.D.N.Y. Dec. 18, 2008) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.
1994)).

element ensures that the defendant prison official acted with a sufficiently culpable state of mind."[111] "Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."[112] "[W]hen a prisoner asserts that delay in his treatment constitutes deliberate indifference on the part of a healthcare provider, the Court looks to the severity of the consequences brought about by the alleged delay."[113]

## III. DISCUSSION

### A. Plaintiff's Claims Against Kirby and the Individual Defendants in Their Official Capacity are Barred by the Eleventh Amendment

As stated earlier, the Eleventh Amendment bars suits in federal court by citizens against a State and its agencies, absent waiver of immunity and consent to suit by the State or abrogation of constitutional immunity by Congress.[114] Because the State of New York has neither consented to suit in federal court nor waived its Eleventh Amendment immunity, all claims against Kirby – a psychiatric

---

[111]    *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (quoting *Estelle*, 429 U.S. at 104)).

[112]    *Id.* (citing *Estelle*, 429 U.S. 105-06).

[113]    *Pabon v. Goord*, No. 99 Civ. 5869, 2003 WL 1787268, at *11 (S.D.N.Y. Mar. 28, 2003) (citation omitted).

[114]    *See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142-47 (1993); *Pennhurst*, 465 U.S. at 100.

24

facility operated by OMH and, therefore, an agency of the State of New York –
must be dismissed.[115] The individual defendants, all of whom are employees of
OMH, have been sued in both their official as well as individual capacities.
Because the Eleventh Amendment bars claims against state employees sued in their
official capacities,[116] plaintiff's claims against the individual defendants in their
official capacities must be dismissed.

**B.    Plaintiff's Claims for Prospective Injunctive Relief Must Be Dismissed**

In addition to seeking money damages, plaintiff seeks injunctive relief
including an injunction against "threats, physical force, verbal abuse, [and] abuse
of authority."[117] However, plaintiff is no longer a patient at Kirby and he cannot
show that he is likely to be recommitted there, given that his brief commitment in
2009 for restoration to fitness to stand trial was the first time he had ever been
committed for such a purpose despite a long criminal history with numerous
convictions and over twenty arrests.[118] Because plaintiff cannot show a real and

_____

[115]    *See Babcock v. New York State Office of Mental Health*, No. 04 Civ.
2261, 2009 WL 1598796 at *26 (S.D.N.Y. June 8, 2009) (stating that psychiatric
facilities established within OMH are state agencies protected by the Eleventh
Amendment).

[116]    *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[117]    Complaint § V (Relief).

[118]    *See* McNair Dep. at 68, 73.

immediate threat of injury that would warrant prospective injunctive relief from the conduct of which he has complained, all claims for injunctive relief must be dismissed.[119]

### C.   Plaintiff's Claims of Inadequate Medical Care Must Be Dismissed

Plaintiff, a pre-trial detainee, claims that defendants "repeatedly refused" to provide him with medical and psychiatric treatment.[120]  These claims must be dismissed because plaintiff has offered no evidence that defendants acted with deliberate indifference.[121]  Plaintiff's reliance on the Eighth Amendment in this regard[122] is misplaced because the Eighth Amendment applies only to persons in prison pursuant to a criminal conviction.[123]  Here, the Fourteenth Amendment applies.  Claims brought by pre-trial detainees for gross negligence or reckless failure to meet medical treatment needs are assessed under a "deliberate indifference" standard that requires satisfaction of both an objective and a

---

[119]   *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983).

[120]   *See, e.g.*, Complaint ¶¶ 4-5, 25, 30, 32, and 36.

[121]   *See Estelle*, 429 U.S. at 104.

[122]   *See* Complaint ¶ 5.

[123]   *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009).

subjective prong.[124]  Plaintiff cannot prove that the medical judgment exercised by

Dr. Tuzel, his treating psychiatrist, was substantially below the standard of care so

as to support any finding of violation of his constitutional rights.[125]

       To satisfy the objective prong of the deliberate indifference standard,

plaintiff must first demonstrate that he had a serious medical condition and that the

condition was met with deliberate indifference by defendants.[126]  A serious medical

condition must be proven objectively in the sense that "a condition of urgency"

exists or that the condition "may produce death, degeneration, or extreme pain."[127]

The serious medical condition inquiry must be "tailored to the specific

circumstances of each case."[128]  Where, as in this case, the serious medical need

claim concerns only a "temporary delay or disruption of otherwise adequate

medical treatment," courts focus on "the challenged delay or interruption in

---

[124]    *See Groves v. State of N.Y.*, No. 9:09-CV-0412, 2010 WL 1257858, at
*6-7 (N.D.N.Y. Mar. 1, 2010); *Caiozzo*, 581 F.3d at 69.

[125]    *See Youngberg v. Romeo*, 457 U.S. 307 (1982).

[126]    *See Groves*, 2010 WL 1257858, at *7 (citing *Caiozzo*, 581 F. 3d at
72).

[127]    *Hathaway v. Coughlin*, 99 F. 3d 550, 553 (2d Cir. 1996).

[128]    *Smith*, 316 F. 3d at 185.

27

treatment" rather than on the "underlying medical condition alone."[129]

To meet the subjective prong of the deliberate indifference test, plaintiff must prove that defendants had a sufficiently culpable state of mind, a state of mind equivalent to criminal recklessness.[130]  Plaintiff must demonstrate that defendants were "'aware of facts' from which one could infer that "a substantial risk of harm' exists, and that [they] drew that inference."[131]

### 1.    Plaintiff Cannot Establish that Defendants Were Deliberately Indifferent to His Heart Condition

Plaintiff, who suffers from congestive heart failure, alleges that defendants Dr. Tuzel and Cuff were deliberately indifferent to his serious medical condition by withholding his heart medication in retaliation for his complaining about missing legal papers.[132]  The record reflects, however, that plaintiff was treated for his pre-existing heart condition by his attending medical specialist, Dr.

---

[129]    *Bellotto v. County of Orange*, No. 06-1185-pr, 2007 WL 2808028, at *3 (2d Cir. Sept. 26, 2007) (citing *Smith*, 316 F. 3d at 185 (noting that there is no "precise metric" for evaluating such claims)).

[130]    *See Hathaway*, 99 F.3d at 553.

[131]    *Bellotto*, 2007 WL 2808028, at *3 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  *Accord Silvera v. Connecticut Dep't of Corr.*, No. 3:09CV1398, 2010 WL 2232471, at *6 (D. Conn. May 27, 2010) (citing *Weyant v. Okst*, 101 F. 3d 845, 856 (2d Cir. 1996)).

[132]    *See* Complaint ¶ 16.

28

Evangelista, who is not named as a defendant in this case.[133]   Plaintiff cannot

show, therefore, that Dr. Tuzel, a psychiatrist, ignored his pre-existing heart

condition because this condition was actually treated and monitored by a

non-defendant.  Nor can he show that Dr. Tuzel instructed Nurse Cuff to withhold

his heart medication.  Therefore, plaintiff cannot establish the subjective prong of

the deliberate indifference standard, which requires a state of mind equal to

criminal recklessness.[134]   On the contrary, plaintiff admits that he was encouraged

to take his heart medications while at Kirby.[135]   In sum, plaintiff cannot prove that

defendants were deliberately indifferent to his medical needs.

### 2.   Plaintiff Cannot Show that Defendants Were Deliberately Indifferent to His Psychiatric Needs

Plaintiff's complaints concerning his psychiatric treatment are

properly analyzed under the professional judgment standard set forth in *Youngberg*

*v. Romeo*, which states that decisions of professionals are presumptively valid and

will result in liability "only when the decision by the professional is such a

substantial departure from accepted professional judgment, practice, or standards

as to demonstrate that the person responsible actually did not base the decision on

---

[133]   *See* Evangelista Decl. ¶¶ 1-2, 15-18, 28.

[134]   *See Hathaway*, 99 F.3d at 553.

[135]   *See* McNair Dep. at 161.

29

such a judgment."[136]

First, plaintiff claims that Dr. Tuzel failed to treat his "major depressive disorder" and that this failure was a substantial departure from accepted professional judgment.[137]   Dr. Tuzel determined that plaintiff did not suffer from a depressive disorder that required medication, based on his examination of plaintiff's Transfer Record and his examination of plaintiff at Kirby.  Pending further observation and evaluation, Dr. Tuzel continued plaintiff on the same medication he had been prescribed at Rikers, Seroquel, an anti-psychotic medication to which plaintiff responded favorably.  Dr. Tuzel also found that plaintiff displayed no signs associated with suicidal or self-injurious behavior such as feelings of depression, pain or hopelessness.  Plaintiff's mental status exam revealed that plaintiff's mood was stable and appropriate although he appeared irritable; his cognitive functioning was not impaired; and he had a good awareness of the consequences of his actions.   Thus, Dr. Tuzel's refusal to prescribe anti-depressant medication to plaintiff was based on sound medical judgment.

---

[136]     *Youngberg*, 457 U.S. at 320.

[137]     *See Olivier v. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183, 190-91 (2d Cir. 2005); *Rodriguez v. City of New York*, 72 F.3d 1051, 1063 (2d Cir. 1995).

Plaintiff also claims that defendants violated his rights because he requested "individualized counseling" at his treatment team meeting but was only provided with group counseling.[138]  Plaintiff cannot prove that the prescribed group therapy was substantially below the standard of care so as to violate his constitutional rights because he has no medical evidence to show that he needed individual therapy.[139]  Moreover, plaintiff's challenge to the particular therapy he received fails because he has "no right to the treatment of [his] choice."[140]

### 3.    Plaintiff's Equal Protection Claim Must Be Dismissed

Plaintiff purports to plead a violation of the Equal Protection Clause by alleging denial of treatment and individual counseling for his alleged depressive disorder.  This claim fails because plaintiff has neither alleged nor proven that defendants subjected him to discriminatory treatment based on his membership in an identifiable or suspect class.[141]  To the extent that plaintiff's claim is predicated

---

[138]    *See* Complaint ¶ 4.

[139]    *See Bolmer v. Olivera*, 594 F.3d 134, 163 (2d Cir. 2010) (affirming objective medical standards test set forth in *Rodriguez*, 72 F.3d at 1063).

[140]    *White v. Rosenberg*, No. 07 Civ. 1807, 2010 WL 423055, at *8 (S.D.N.Y. Feb. 3, 2010) (citing *United States ex rel. Hyde v. McGinnis*, 429 F. 2d 864, 867-68 (2d Cir. 1970) (stating that the right of prisoner's access to medical care does not include the right to have "the type or scope of medical care which he personally desires")).

[141]    *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995).

31

on a "class of one" theory, that claim fails as well because plaintiff has not

proffered any evidence showing how defendants intentionally treated him

differently, without any rational basis, from other similarly situated Kirby

patients.[142]

### 4. Plaintiff's Claim that Defendants Failed to Treat An Ankle Injury Must Be Dismissed

Plaintiff claims that defendant Cuff refused to examine his ankles,

which he alleges were swollen for reasons related to his congestive heart failure

condition.[143] The evidence, however, is to the contrary. Plaintiff admits that he

twisted his ankle playing basketball at Kirby, that the nurse on duty looked at it,

and that he was treated. In sum, plaintiff cannot prove that any defendant

obstructed or otherwise delayed treatment for his ankle injury. Plaintiff's claim is

nothing more than a garden variety tort that is not cognizable under section 1983

and must be dismissed.[144]

### D. Plaintiff's Claim of Denial of Access to Courts Must Be Dismissed

To support his claim that defendants denied him access to the courts,

---

[142]     *See Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010) (requiring a high degree of particularity in class-of-one claims).

[143]     *See* Complaint ¶ 36.

[144]     *See Flowers v. City of New York*, 668 F. Supp. 2d 574, 578 (S.D.N.Y. 2009).

plaintiff must show deliberate and malicious interference that actually impeded his access to a court or prejudiced an existing action.[145]   Plaintiff's "access claim" must be dismissed because he offers no evidence that any defendant deliberately and maliciously took actions, or caused actions to be taken, that actually hindered plaintiff's efforts to pursue a legal claim.

Plaintiff alleges that he gave his social worker at Kirby, defendant Carolyn Todd, a forty-page legal document to be photocopied, but that some pages were not returned to him after copying.  Plaintiff claims that this alleged failure to return all his papers caused him to miss a June 1, 2009 discovery deadline in the *Stevens* case, which resulted in dismissal of that case.  However, plaintiff fails to set forth any evidence that defendants impeded him from contacting the court either before or after the June 1, 2009 deadline.  Contrary to plaintiff's allegations, the record demonstrates that it was plaintiff's inaction before and after the June 1, 2009 discovery deadline that eventually caused the *Stevens* case to be dismissed. Plaintiff did not give his legal papers to Todd until June 9, 2009 at the earliest. Thus, plaintiff had failed to meet his discovery deadline before he ever gave the legal papers to Todd for copying.  On June 19, 2009, Judge Harold Baer placed the *Stevens* case on the suspense calendar for ninety days pending dismissal if

---

[145]     *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

plaintiffs failed to contact the court regarding a discovery schedule.  In fact, the *Stevens* case was not dismissed until October 7, 2009, nearly three months after plaintiff's discharge from Kirby.  Consequently, the dismissal of the *Stevens* case cannot be attributed to any of the defendants.[146]  In addition, plaintiff's claim is moot because the *Stevens* case was reinstated on January 12, 2010, and thereafter settled.  Plaintiff cannot show, therefore, that the alleged loss of his legal papers caused him any actual harm.[147]

Finally, plaintiff cannot show that any defendant deliberately or maliciously hindered his access to the courts.  The record shows that plaintiff's concerns about his missing legal papers were duly investigated.  Moreover, despite the lack of evidence that any papers were missing, Todd made efforts to locate any missing papers.  Plaintiff's claim that he was denied access to the courts must therefore be dismissed.[148]

--------------------------------------------------

[146]    *See David v. N.Y.P.D. 42nd Precinct Warrant Squad*, No. 02 Civ. 2581, 2004 WL1878777, at *4 (S.D.N.Y. Aug. 23, 2004) (finding that no reasonable juror could conclude that the dismissal of plaintiff's lawsuit resulted from the loss of his legal papers, when plaintiff failed for three months thereafter to re-file his action despite the opportunity to do so).

[147]    *See Robinson v. NYS Dep't of Corr. Servs.*, No. 9:08-CV-0911, 2009 WL 3246818, at *12-13 (N.D.N.Y. Sept. 30, 2009).

[148]    *See Smith v. O'Connor*, 901 F. Supp. 644, 649 (S.D.N.Y. 1995) ("At best, plaintiff's allegation that his 'law work' was destroyed supports the conclusion that he was temporarily inconvenienced by the loss of his papers.

Furthermore, in claiming that defendants denied him access to the courts, plaintiff also alleges that defendants refused to let patients mail more than two letters a day. This putative First Amendment claim fails as he cannot show that defendants "regularly and unjustifiably" interfered with his mail.[149] Mailing restrictions imposed at an OMH psychiatric facility are properly analyzed under the same "legitimate penological interests" standard that applies to prisoners.[150] Under Kirby policy, postage stamps are considered contraband and are prohibited because possession of such items tends to promote theft and exploitative conduct among patients. However, patients are permitted to mail two letters per day at no cost to them, beyond which they are charged the cost of mailing. Not only has plaintiff failed to show any injury arising from Kirby's mail policy, but he has also failed to show why the policy is not reasonably related to Kirby's interest in the safety and security of its patients. Therefore, his claims regarding mailing

---

While understandably frustrating, it does not violate a constitutional right.").

[149]    *See DeLeon v. Doe*, 361 F.3d 93, 94 (2d Cir. 2004).

[150]    *Ahlers v. Rabinowitz*, No. 08 Civ. 11091, 2010 WL 808773, at *2 (S.D.N.Y. Mar. 9, 2010) (citing *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006)). *Accord Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir. 1987) ("A regulation affecting an inmate's attempt to send or receive mail is valid if it is reasonably related to legitimate penological interests.") (quotation marks and citation omitted).

restrictions fail.[151]

### E.    Plaintiff's First Amendment Claims Fail

Plaintiff identifies his treating psychiatrist, Dr. Tuzel, as the primary individual responsible for a series of adverse actions purportedly taken in response to plaintiff's complaints about missing legal papers.  Plaintiff alleges that his ward privileges and visits were restricted, that he was subjected to intrusive searches and medication by injection, that his medical appointments were canceled and medications withheld, and that he was not treated for an ankle condition.[152]  He further alleges that Dr. Tuzel threatened him with physical force when plaintiff complained about the loss of his legal papers.  As with prisoner retaliation claims, plaintiff's claims should be approached "with skepticism and particular care" because such claims may be "easily fabricated."[153]   His retaliation claims fail because plaintiff makes wholly conclusory allegations without any competent evidence that any defendant took an adverse action on the basis of plaintiff's complaining  about his missing legal papers or any other matter.

---

[151]     *See Davis*, 320 F.3d at 351 (viewing prison mailing regulations that further "security, order, and rehabilitation" as justifiable).

[152]     *See* Complaint ¶¶ 11, 16, 24, 25, 34, 36.

[153]     *Dawes v. Walker*, 239 F 3d. 489, 491 (2d Cir. 2001).

### 1. Plaintiff's Claim That His Treating Psychiatrist Threatened Him Is Insufficient to Sustain a First Amendment Claim

Although plaintiff alleges that his treating psychiatrist, Dr. Tuzel, threatened him with physical force when he asked about his missing legal papers, plaintiff admits that Dr. Tuzel did not touch him and that plaintiff actually threatened Dr. Tuzel with physical harm by telling him that he "would do something to him" should he see him "in the street." Therefore, plaintiff's claim based on the threat of physical harm must be dismissed.

### 2. Restricted Ward Privileges, Intrusive Searches, and Medication by Injection Are Insufficient to Sustain a First Amendment Claim

Plaintiff alleges that Dr. Tuzel used Kirby's Patient Level System "as a mechanism to abuse mentally ill patients."[154]   To the extent that plaintiff means that Dr. Tuzel used the Level System to retaliate against plaintiff, the claim must be dismissed because Dr. Tuzel reduced plaintiff's privileges in response to plaintiff's threat of physical violence against him, and not because plaintiff complained about the loss of his legal papers. Dr. Tuzel reduced plaintiff's privileges in accordance with Kirby policy, under which patients who engage in verbal abuse or threatening behavior have their ward privileges restricted pending their return to nonviolent or non-threatening behavior.   Therefore, plaintiff's

---

[154]      Complaint ¶ 11.

retaliation claim in connection with the Patient Level System must be dismissed as there is no nexus between his complaints about his lost legal papers and his reduced ward privileges.[155]  Similarly, plaintiff's claim that his visiting privileges at Kirby were restricted in response to his complaints must be dismissed.  Dr. Tuzel restricted plaintiff's visits over the Fourth of July weekend after he was found in possession of contraband (cigarettes) in violation of Kirby policy.  In doing so, Dr. Tuzel acted in accordance with established Kirby policy.  Plaintiff's inability to demonstrate that Dr. Tuzel's actions were taken pursuant to something other than established policy warrants dismissal of this claim.[156]

Plaintiff also claims that he was subjected to intrusive searches and medication by injection in retaliation for his complaints.  The record shows, however, that plaintiff was given emergency medication by intramuscular injection and secluded for one to two hours following an incident during a ward search for contraband on July 7, 2009, in which plaintiff threatened to kill Dr. Cristina Musat

---

[155]   *See Victor v. Milicevic*, No. 08-1772-pr, 2010 WL 227646, at *2 (2d Cir., Jan. 19, 2010) ("[A] plaintiff must demonstrate that constitutionally protected conduct was a substantial or motivating factor for a prison official's adverse action.") (citing *Bennett*, 343 F.3d at 137).

[156]   *See Cruz v. Church*, No. 9:05-CV-1067, 2008 WL 4891165, at *12 (N.D.N.Y. Nov. 10, 2008) (dismissing prisoner's retaliation claim in the absence of any evidence establishing a nexus between protected activity and the adverse actions complained of).

and lunged at another (non-defendant) staff member before being physically restrained.  Plaintiff's claim must be dismissed as has failed to offer any evidence of a causal connection between his complaints about his missing legal papers (or any other matters) and the complained-of actions.

### 3.  Canceled Medical Appointments and Withheld Ankle Treatment Are Insufficient to Sustain a First Amendment Claim

Plaintiff alleges that Dr. Tuzel canceled two medical appointments scheduled for June 18 and June 19, 2009.  Plaintiff's claim is *de minimis* in that the cancellation of an eye doctor appointment and a cardiology follow-up appointment does not give rise to a claim of constitutional magnitude.[157]   Moreover, plaintiff has not offered any evidence showing a causal connection between his canceled appointments and any complaints that he made.  Therefore, plaintiff's purely conclusory claim that his psychiatrist canceled an eye clinic appointment and a follow-up cardiology appointment in retaliation for plaintiff's complaints must be dismissed.

Plaintiff's further claim that his medical (i.e., non-psychiatric) medications were withheld in retaliation for his complaints must also be dismissed

---

[157]    *See James v. Phillips*, No. 05 Civ. 1539, 2008 WL 1700125, at *7 (S.D.N.Y. Apr. 9, 2008) (viewing the claim of a canceled physical therapy appointment to be a de minimis claim "not sufficiently serious to amount to a cognizable claim under any theory").

as plaintiff has neither produced any competent evidence that any defendant withheld his medications, nor adduced any evidence of a causal connection between his complaints about the loss of his legal papers and the allegedly retaliatory conduct.  Plaintiff's claim that Dr. Tuzel directed Cuff not to administer his non-psychiatric medications is wholly conclusory and, therefore, must be dismissed because plaintiff has presented no facts to support such a claim.[158]  The record shows that defendant Cuff, the ward nurse who allegedly refused to give plaintiff his morning medications, documented plaintiff's refusal of medication on days he refused, and informed plaintiff's attending medical specialist, Dr. Evangelista (a non-defendant) and other Kirby staff of plaintiff's refusal. Plaintiff's unsupported claims are insufficient, therefore, to allow a reasonable jury to find that plaintiff's medications were withheld from him, let alone in retaliation for his complaints.[159]  Plaintiff does not even suggest any motive for either Dr.

---

[158]    *See Shabazz v. Pico*, 994 F. Supp. 460, 468 (S.D.N.Y. 1998).

[159]    *See Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Key v. Toussaint*, 660 F. Supp. 2d 518, 526 (S.D.N.Y. 2009) (noting the need for "skepticism and particular care" when examining prisoners' retaliation claims) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

40

Tuzel or Cuff to retaliate against him for complaining about his legal papers.[160]

Plaintiff's claim that Cuff failed to treat him for an ankle injury on June 20, 2009, must be dismissed on the same basis as his other retaliation claims. The record demonstrates that plaintiff complained on two occasions about ankle pain sustained while running and playing basketball – on the weekend of June 13-14, 2009, and again between June 27 and June 30, 2009 – and was treated by medical staff on both occasions. Plaintiff has not produced evidence to the contrary that would support any alleged retaliation claim.

### F.   No Personal Involvement Is Alleged as to Six Defendants

In order to hold a defendant liable under Section 1983, a plaintiff must show "that each Government-official defendant, through that official's own individual actions, has violated the Constitution."[161] Under *Iqbal*, a plaintiff must show purposeful activity to violate an individual's constitutional rights.[162] Plaintiff has not done so here with regard to the following defendants.

---

[160]   *See Green v. Phillips*, No. 04 Civ. 10202, 2006 WL 846272, at *3 (S.D.N.Y. Mar. 31, 2006) (dismissing prisoner's retaliation claims where prisoner failed, among other things, to allege why defendants would wish to retaliate against him for engaging in a hunger strike).

[161]   *Iqbal*, 129 S. Ct. at 1948.

[162]   129 S. Ct. at 1948-49.

41

### 1.    Commissioner Hogan

Plaintiff sued Commissioner Hogan solely because he is a high-level official who plaintiff contends is responsible for the actions of his subordinates.   It is well settled, however, that supervisory officials "cannot be liable solely on account of the acts of omissions of his or her subordinates."[163]   Plaintiff has not shown that Commissioner Hogan participated directly in any denial of medical or psychiatric treatment, loss of legal papers, or retaliation against plaintiff.  Nor has plaintiff shown that Commissioner Hogan participated at all in plaintiff's care and treatment.  His only contact with Commissioner Hogan was through telephone calls to his office, at which time he spoke with the Commissioner's secretaries.  Assuming, *arguendo*, that plaintiff communicated with the Commissioner's office, mere notification of alleged wrongdoing does not establish personal involvement under Section 1983.[164]  Therefore, all claims against Commissioner Hogan must be dismissed.

### 2.    The Two Kirby Administrators

Plaintiff has offered no evidence to support his claims against Kirby's

---

[163]     *Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801, 2009 WL 1835939, at *4 (S.D.N.Y. June 26, 2009).

[164]     *See Gibson v. Commissioner of Mental Health*, No. 04 Civ. 4350, 2008 WL 4276208, at *8 (S.D.N.Y. Sept. 17, 2008).

Executive Director, Steven Rabinowitz, or against Deputy Executive Director,

Vincent Miccoli.  He sued them on the same basis that he sued Commissioner

Hogan.  There is no evidence, however, that either administrator was directly

involved in the challenged conduct by subordinates so as to create liability against

them under Section 1983.

### 3.    Cristina Musat, M.D., Stunis Machanical, L.C.S.W., and Jessica Klaver, Ph.D.

Dr. Musat was Kirby's Director of Psychiatry at the time plaintiff was

a patient.  Plaintiff named her in his Complaint merely because he believes that Dr.

Musat was responsible for the actions of her subordinates and because she

allegedly told plaintiff that "we make the rules here." Although plaintiff claims that

he complained to Dr. Musat about his missing legal papers, mere notification of

alleged wrongdoing does not establish personal involvement.[165] Thus, his claims

against Dr. Musat fail.

Plaintiff's allegations concerning the treatment team leader, Stunis

Machanical, L.C.S.W., are similarly insufficient to establish his personal

involvement.  Plaintiff named him merely because Mr. Machanical, as treatment

team leader, was present on at least one occasion when Dr. Tuzel and other team

---

[165]    *See Chambers v. Wright*, No. 05 Civ. 9915, 2007 WL 4462181, at *3
(S.D.N.Y. Dec. 19, 2007); *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506-07
(S.D.N.Y. 2002).

members listened to plaintiff's concerns about his psychiatric treatment. However, Machanical was not responsible for prescribing McNair's psychiatric or medical treatment and plaintiff's subjective beliefs to the contrary cannot overcome this fact. Finally, with regard to Jessica Klaver, the ward psychologist, McNair never spoke to her, and named her merely because she is listed on his treatment plan. Accordingly, the above defendants must be dismissed for lack of personal involvement regardless of the other deficiencies in plaintiff's Complaint.

## IV.   CONCLUSION

In sum, the Eleventh Amendment bars plaintiff's claims against Kirby and the individual defendants sued in their official capacities. Plaintiff's claim for injunctive relief fails because he cannot show a real and immediate threat of injury. Plaintiff's claims of inadequate medical care fail because he cannot show that defendants acted with deliberate indifference to his medical needs or that they violated his right to equal protection. Plaintiff's claim of denial of access to the courts fails because defendants did not hinder his access to the courts and there was no injury. Plaintiff's retaliation claims also fail as they are conclusory and unsupported by evidence that any defendant took an adverse action in retaliation for plaintiff's complaining. In addition, plaintiff fails to show any personal involvement on the part of the following six defendants: Commissioner Hogan, Executive Director Steven Rabinowitz, Deputy Director Vincent Miccoli, Kirby's

44

Director of Psychiatry (Cristina Musat, M.D.), the ward psychologist (Jessica Klaver, Ph.D.), and his treatment team leader (Stunis Machanical).

For these reasons, defendants' motion for summary judgment is granted and plaintiff's Complaint is dismissed in its entirety.  The Clerk of the Court is directed to close this motion (Document # 39) and this case.

Because plaintiff is proceeding *in forma pauperis*, any appeal from this Order would not be taken in good faith.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             November 5, 2010

45

## - Appearances-

**Plaintiff (Pro Se):**

Larry McNair
2070 Seventh Avenue, Apt. 5S
New York, NY 10027
(646) 861-1788

**For Defendants:**

Jane R. Goldberg
Assistant Attorney General
120 Broadway, 24th Floor
New York, NY 10271
(212) 416-6133